IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-460-11 |
| ANGEL RIOS-VALENTIN | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

Defendant ANGEL RIOS-VALENTIN, a member of the VALENTIN family which in turn stands at the center of this drug-trafficking organization, has been a part of the conspiracy for as long as any person charged in the indictment—he is named in the very first Overt Act listed, from 2016. He has proven himself to be a *three times* violator of court supervision, and engaged in the recent offense conduct in this case while he was on federal supervised release for a 922(g) conviction from 2020 (when he unlawfully possessed a gun that he retrieved from the 3100 block of Weymouth Street).

For these reasons and more, on October 22, 2025, a grand jury in the Eastern District of Pennsylvania returned a 41-count indictment charging ANGEL ROIS-VALETIN and 32 other co-defendants with running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025. Defendant ANGEL ROIS-VALETIN is one of the leaders of this drug trafficking organization (the "Weymouth DTO") as well as a case worker who has been involved in day-to-day shifts on the block since 2016. He is the brother of co-defendant NANCY RIOS-VALENTIN, and was the brother of Co-Conspirator 1 who was the top leader of the Weymouth DTO until he was killed in November 20224. Defendant A. RIOS-VALENTIN was specifically

1

charged with Count One, conspiracy to traffic 28 grams or more of crack cocaine, as well as fentanyl and powder cocaine, between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B), (b)(1)(C), and is named in numerous Overt Acts—including from January 9, 2016, the earliest Overt Act in the indictment, in which he sold cocaine on the block, from August 12, 2017, in which he sold crack-cocaine on the block and also possessed fentanyl, and from August 17, 2019, in which he picked up a firearm from the block and transported it elsewhere (as a previously convicted felon).

Due to the significant amount of fentanyl, cocaine, and crack cocaine underlying the charges, a presumption in favor of detention exists pursuant to the Bail Reform Act.  The defendant cannot overcome that presumption here because—as explained in more depth below—the strength of the government's case, the deadly and addictive nature of the drugs the defendant was distributing, the length of the sentence the defendant faces, and a number of factors about the defendant's background, together demonstrate that the defendant presents a risk of flight and danger to the community such that there is no condition or combination of conditions that will reasonably secure the defendant's presence at trial.  In short, the presumption in favor of detention cannot be rebutted and the defendant should be detained for his danger to the community and risk of flight.

I. **OVERVIEW OF INDICTMENT AND "WEYMOUTH DTO"**

In support of this motion, the government makes the following representations and proposed findings of fact:

1. The 41-count indictment in this case charges defendant ANGEL RIOS-VALENTIN, along with 32 other co-defendants, with a near decade-long conspiracy to traffic fentanyl, cocaine, and crack cocaine, in Philadelphia, from January 2016 through October 2025.

Specifically, defendant A. RIOS-VALENTIN and his co-defendants were part of the drug trafficking group that has operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO."

2.  The 3100 block of Weymouth Street has plagued the City of Philadelphia of years, as it has functioned as what is effectively an open-air drug market that operates 24 hours a day, 365 days a year, where addicts can come to buy fentanyl, cocaine, and crack cocaine, up and down the block.  The Weymouth DTO uses multiple occupied and abandoned houses and lots on the block—as well as trash cans, ground drains, cars, tires, and porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions.  A photograph of the 3100 block of Weymouth Street, taken on April 30, 2024, which was a day that the DTO was handing out free samples of a new product line, is shown below:



3.  In addition to storing drugs in various locations along the 3100 block of Weymouth for daily sales by street dealers, the Weymouth DTO uses several off-the-block locations to package and store drugs that are delivered to the block through "reups."  Up until

3

August 2025, when the FBI searched both locations, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine. The Weymouth DTO also uses a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine. The location, called the "bunker," consists of a drywall structure with a physically connected tent structure, with a door in between that can be opened or closed.

4. Over the course of the FBI and Philadelphia Police Department's investigations in this case, roughly 3.9 kilograms of fentanyl, 727 grams of crack cocaine, and 3.8 kilograms of powder cocaine were seized by law enforcement, either from controlled buys, arrests on the block, or the execution of search warrants. But those amounts—arrived at through tallying up one-moment-in-time snapshots, either of drugs transacted with an individual buyer or drugs stored in a location for imminent sale—do not *come close* to representing the enormous quantity of illegal drugs sold by this DTO over the 9-year conspiracy charged. A conservative estimate, as the evidence underlying the case will show, is that the Weymouth DTO, for the 9-year conspiracy period charged, trafficked roughly 10-18 kilograms of fentanyl and 16-30 kilograms of crack cocaine, to buyers in Philadelphia.

5. The Weymouth DTO also commits violent assaults, including murders, to maintain control over its drug empire on the 3100 block of Weymouth Street and the surrounding blocks. The indictment describes assaults committed by defendants in this case, such as on November 7, 2024, when defendants JOSUE ONEILL ORTIZ-BETANCOURT and JONATHAN TORRES, along with Co-Conspirator 12 (now deceased) and another individual, chased a car off the 3100 block of Weymouth and repeatedly shot at the car around the corner,

while defendant ELLIOT MATTEI-RODRIGUEZ, a/k/a "Elio," pulled out a firearm, chambered a round, and stood guard on the 3100 block of Weymouth. On March 16, 2025, defendants JOHN DAVID LOPEZ-BORIA a/k/a "Grande," LUIS WILLIAMS, and Co-Conspirator 17 physically assaulted an individual on the block, as captured on pole camera. On May 6, 2024, defendant ROMAN ROMAN-MONTANEZ and Co-Conspirator 12, now deceased, dragged an unknown person across the ground in the direction of the "bunker" at 3153 Weymouth Street, after which Co-Conspirator 12 struck the person with a rod.

6. Members of the Weymouth DTO routinely possess firearms, either on their persons but more commonly in vehicles, houses, porches, fences, or abandoned lots, that they use to protect their drug stash, drug proceeds, and commit or threaten violent assaults. The indictment charges numerous instances in which Weymouth DTO members possessed firearms either on the block or shortly after leaving the block. To name just a few examples: in January 2019, the DTO stored three loaded firearms inside 3125 Weymouth Street; on August 27, 2019, defendant ANGEL RIOS-VALENTIN left the block with a loaded firearm—following a visit to 3152 Weymouth Street—and was convicted of a federal 922(g) offense; in December 2019, the DTO stashed a Hi-Point, Model 995 semiautomatic rifle, a Sig Sauer 9mm semiautomatic pistol, a Glock 26 9mm semiautomatic handgun, and a Keltec 9mm semiautomatic firearm, all inside of 3162 Weymouth Street; on March 11, 2022, defendant ELLIOT MATTEI-RODRIGUEZ was found in possession of two loaded Glock firearms, shortly after he left 3152 Weymouth Street; on August 2, 2020, defendant ANGEMILL GONZALEZ-CLAUDIO, a/k/a "Angel," a/k/a "Angie," went up to a car on the 3100 block of Weymouth Street, opened the trunk, took out two bags that contained rifles visibly sticking out, and displayed one firearm to males on the street while depositing another firearm inside of a vehicle; in October 2022, defendants ROMAN-

MONTANEZ and NANCY RIOS-VALENTIN had four loaded firearms in their residence, of 3152 Weymouth Street, while other DTO members possessed a Draco AK 47, an AR-15, and another loaded handgun, in other locations; just recently on August 13, 2025, defendant LUIS LEVANTE-MEDINA, a/k/a "Diamante," tossed a firearm onto the street as he was trying to evade law enforcement.  Also on August 13, 2025, when the FBI and local police searched the DTO's "bunker" at 3153 Weymouth Street, they recovered numerous rounds of loose ammunition of various calibers, including AK 47 rounds.

7. In addition, Weymouth DTO members—in order to promote the reputation of the Weymouth DTO and chill potential enemies from encroaching on the DTO's turf—will frequently appear in rap videos and other posts uploaded to Youtube and Instagram, in which they display firearms, use hand signs or flash insignias for the Weymouth DTO, and threaten acts of violence against rivals.  Screenshots from some of these videos are below:

"Patroncito"



Shown above:  Screenshot from YouTube video entitled "Patroncito," uploaded November 1, 2023 by an unindicted co-conspirator (Co-Conspirator 11), in which Co-Conspirator 12 (whose

6

alias was "Panza") appears brandishing a firearm, and Co-Conspirator 11 raps the lyrics, "I'll get you with Panza with Draco and you're stiff"

<u>"Philly Boy"</u>





Shown above: Screenshots from YouTube video entitled "Philly Boy," uploaded April 19, 2024 by an unindicted co-conspirator (Co-Conspirator 13), filmed on the 3100 block of Weymouth Street, in which defendants ELLIOTT MATTEI-RODRIGUEZ, a/k/a "Elio," LUIS WILLIAMS, JOSE SANTANA-GONZALEZ, a/k/a "Chipi," a/k/a "Chepo," and JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appear next to individuals wielding firearms, making gestures of

violence or gang affiliation, and walking through streets that neighbor the 3100 block of Weymouth Street

"23"



Shown above, screenshot from YouTube video entitled "23," uploaded May 18, 2024 by Co-Conspirator 11, in which defendant JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appears brandishing a firearm, and in which LOPEZ-BORIA, Co-Conspirator 11, and others are shown holding stacks of drug proceeds on the 3100 block of Weymouth Street.  The lyrics rapped include, "You die today or you die today, I will make sure of it, They told me the facts, you're talking to DEA."

"Kaioken"



Shown above, screenshot from YouTube video entitled "Kaioken," uploaded January 16, 2025 by an unindicted co-conspirator, Co-Conspirator 17, in which Co-Conspirator is seen brandishing a handgun with an extended magazine on a stoop outside the "bunker" at 3153 Weymouth Street, and in which defendant JOHN DAVID LOPEZ BORIA, a/k/a "Grande" also appears.  In the video, Co-Conspirator 17 raps lyrics that include, "I don't talk, I get in and will come to hunt you, asshole."

8. The Weymouth DTO is an organized drug operation with an established scheduled of "shifts" for caseworkers and street dealers.  The schedule is distributed by leaders of the Weymouth DTO, such as defendants RAMON ROMAN-MONTANEZ and NANCY RIOS-VALENTIN, and sets forth which member of the group will be working on a given day of the week and during what time block.  An example of the written schedule from May 2022, which was provided by defendant NANCY RIOS VALENIN to another co-conspirator in a text message, is shown below.



The evidence in this case includes 6 months of recordings from Title III wiretaps—on phones belonging to five different defendants in the indictment—which in turn demonstrates that the DTO continues to work in an organized, business-like fashion, assigning shifts to different DTO members, coordinating the delivery of new installments of fentanyl, cocaine and crack to the block on a regular basis, and collecting and pooling proceeds from the sales of drugs so that they go back into a common pot.

9. Given the drug weights involved, the violent nature of the group, and the sentencing exposure for all individual charged, the government is seeking the pretrial detention of nearly all 33 defendants listed in the indictment. Every single one of these individuals was an

entrenched, committed member of the Weymouth DTO—with some defendants going back to 2016, 2017, and 2018, in terms of their activities on the 3100 block of Weymouth (defendants JOSE ANTONIO MORALES NIEVES, ANGEL RIOS VALENTIN, RAMON ROMAN-MONTANEZ, NANCY RIOS-VALENTIN, JAVIER RESTO-BERRIOS, CARLA DIAZ-RESTO), others steadily working on the block since the 2020, 2021, and 2022 time frame (defendants ANGEMILL GONZALEZ-CLAUDIO, ELLIOT MATTEI-RODRIGUEZ, KELVIN AGUAYO-GARCIA), and even what-may-be newer members of the Weymouth DTO demonstrating a steady record of involvement in the DTO at least for many months.

## II.  LEGAL STANDARD

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in determining whether a person should be released or detained pending trial in a federal court. In summary, these factors are:

1) the nature and circumstances of the offenses charged;
2) the weight of the evidence against the defendant;
3) the history and characteristics of the defendant including-
    a) employment history, financial resources, drug abuse, criminal history and record pf appearance at court proceedings, and
    b) whether he was on supervision at the time of his offenses or arrests or was on release pending court proceedings;
4) the dangerousness to any person or the community.

18 U.S.C. § 3142(g).

The Bail Reform Act also provides that with respect to certain specified crimes, a rebuttable presumption arises that a defendant is a risk of flight and that no condition or combination of conditions will reasonably assure the safety of any other person and the community, such that detention pending trial is presumed warranted. 18 U.S.C. § 3142(e). One

of the crimes specified is a violation of the Controlled Substances Act for which the maximum term of imprisonment is 10 years' or greater.   Specifically, Section 3142(e)(3) states:

> Subject to rebuttal…it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed:
>
> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)…
>
> (B) an offense under section 924(c) . . . of this title.

18 U.S.C. §§ 3142(e)(3)(A), (B).

Here, because the amount of crack cocaine charged in Count One and attributable to defendant is in excess of 28 grams, the maximum term of imprisonment the defendant faces under the Controlled Substances Act is 40 years' imprisonment.   *See* 21 U.S.C. 841(a)(1), (b)(1)(A).  Accordingly, the presumption in favor of detention under the Bail Reform Act is triggered in this case.

Where the presumption in favor of detention arises, a defendant must rebut the presumption by presenting some credible evidence that he/she will not flee and does not pose a threat to the community.  *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986).   In drug-trafficking cases such as this, the presumption is difficult to overcome.  "The statutory language, as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community."  *Strong,* 775 F.2d at 506.  Indeed, Congress and the Third Circuit have provided this guidance:

12

> The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence. ... **The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

*Id.* at 507 (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). As the Third Circuit has noted: "It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and, thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S. Rep. No.225, 98th Cong., 1st Sess. 20); *accord United States v. Cervantes,* 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the distribution of large quantities of drugs poses continuing danger to the community); *United States v. Ramirez*, 843 F.2d 256, 258 (7th Cir. 1988) (same).

### III. INDIVIDUALIZED ANALYSIS FOR THE DEFENDANT

Defendant ANGEL RIOS-VALENTIN cannot overcome the presumption in favor of detention. He has served as a member of the Weymouth DTO for as long as nearly anyone charged in this indictment—he has arrests for serving as a lookout, dealing drugs, or retrieving firearms on the block from 2016, 2017, and 2019. The 2019 arrest resulted in a federal conviction under 18 U.S.C 922(g), and a sentence of 60 months' imprisonment, which took the defendant off the block for a few years. As soon as he returned, A. RIOS-VALENTIN fell back into drug-trafficking activities with the DTO. He takes occasional shifts on the block, keeps track of drug sale volumes, and places orders for crack cocaine to be delivered to his own house, in Milleville, New Jersey, so he can sell to buyers in his vicinity for the DTO. For these reasons,

as further discussed below, the defendant presents a serious danger to the community if released as well as a risk of flight.

Specific Charges / Evidence Pertaining to the Defendant

As noted above, defendant ANGEL RIOS-VALENTIN is charged in Count One, the conspiracy count, as well as in numerous Overt Acts going back to 2016. On January 9, 2016, A. RIOS-VALENTIN served as a look-out for a co-conspirator who was dealing drugs (small amounts of heroin and cocaine) inside of 3153 Weymouth Street. The house was found to contain 3 grams of cocaine. On August 12, 2017, the defendant sold 28 flip-top containers of crack cocaine to a buyer on the 3100 block of Weymouth Street, using a blue Dodge Caravan on the block as his temporary stash location. That Dodge Caravan, for which A. RIOS-VALENTIN had the keys, was found to contain 364 containers of crack cocaine, 121 packets of powder cocaine, and 280 packets of "Santa Muerta"-stamped heroin. On August 27, 2019, A. RIOS-VALENTIN retrieved a black bag containing a loaded .40 caliber S&W firearm, attached to a Glock 3 Austria slide, from 3152 Weymouth Street, and proceeded to 1200 East Venango Street, carrying the firearm in the bag. This gave rise to his separate 922(g) conviction in 2020. During the more recent conspiracy period, A. ROIS-VALENTIN is captured on recorded calls with co-defendant JAVIER RESTO-BERRIOS a/k/a "Chicken" discussing shifts, how much money the DTO made the day or shift prior, and the delivery of "chinitas"—a code word for crack cocaine—to his residence.

Criminal History

ANGEL RIOS-VALENTIN has the following criminal history:

- **5/13/14 – PWID conviction in Philadelphia Court of Common Pleas**, offense

14

date of 2/8/14, sentenced to 4 years' probation (the defendant's 7/1/16 conviction, listed below, constituted a violation of this term of probation; the 7/6/17 incident, also listed below, constituted a second violation of this term of probation). Facts of Offense: Sold two packets of heroin and one packet of cocaine to a buyer, and 12 packets of heroin and 1 packet of cocaine were recovered from his stash.

- **7/1/16 – PWID conviction in Philadelphia Court of Common Pleas**, for offense date 1/10/16, sentenced to 3 years' probation (on 7/6/17, violated probation and was sentenced to 30 days to 23 months' imprisonment). Facts of Offense: As noted above, served as look-out for co-defendant making drug sales on 3100 Weymouth Street, where 3 grams of cocaine were found.
  - The defendant was **in absconder status on this case**, giving rise to his probation violation in 2017, and remained so until his August 2019 arrest.
- **10/13/20 – 922(g) conviction in EDPA**, for offense date of August 27, 2019, sentenced to 60 months' imprisonment and 3 years' supervised release. Facts of Offense: Took firearm off Weymouth Street when he was a previously convicted felon.

Notably, defendant ANGEL ROIS-VALENTIN has violated his terms of probation or supervised release for his prior convictions at least three separate times. As to his 2014 PWID conviction, he violated his terms of probation when he committed the offense conduct giving rise to his 2016 case. As to his 2016 PWID conviction, he violated his terms of probation about a year later, in 2017, by absconding from probation and remaining in absconder status all the way until 2019, when he was arrested for the 922(g) offense and sentenced to 60 months'

15

imprisonment followed by 3 years' supervised release. He is presently on federal supervised release for that offense, and his involvement in the Weymouth DTO in 2025 constitutes violations of the terms of his conditions of supervised release.

Flight Risk

ANGEL RIOS-VALENTIN faces a 5-year mandatory minimum in this case and a Guidelines range sentence well in excess of that. Moreover, he has already proven himself to be an absconder from court supervision – absconding from probation in the Philadelphia Court system for two years, between July 2017 and August 2019 (when he was found due to being arrested for other criminal conduct). His offense conduct in this case, while on federal supervised release, demonstrates that he will not abide by the terms of court supervision. As to ties to the community, wages searches for A. RIOS-VALENTIN in Pennsylvania and New Jersey indicate that the only employment he has had over the past 4 years in either state has been in 2025Q2, earning $3,489 from the Flanders Condominium Association in Ocean City, New Jersey.

Danger to the Community

Defendant RIOS-VALENTIN presents a danger to the community that no conditions of pretrial release can sufficiently protect against. He operates as a leader of the Weymouth DTO, takes occasional shifts on the block, maintains oversight over the DTO's daily activities, and is particularly involved in crack cocaine sales for the DTO. He has two prior felony drug-trafficking convictions (in state court) and one prior felony gun conviction (in federal court), the latter two which were connected to Weymouth Street. Defendant RIOS-VALENTIN has deep ties to the Weymouth DTO given that he is the brother of co-defendant NANCY RIOS-VALENTIN and was also the brother of FELIX VALENTIN, who used to be the leader of the

DTO until he was killed in November 2024, and has been involved in the DTO for nearly 9 years.  The fact that after being sentenced to 60 months' imprisonment in federal court in 2020, he came out of prison only to reestablish himself with the Weymouth DTO—as his numerous recordings on the wire throughout 2025 bear out—demonstrates that he presents a danger to the community that cannot be mitigated by terms of pretrial supervision.

    Finally, the day of his arrest the FBI seized the following firearms from his residence: a Glock Model 22 .40 caliber loaded with 19 rounds, a Anderson MFG Assault Rifle (pictured below)1, a CD Defense 9mm semi automatic assault pistol with 9 live rounds, and a Aero Precisions Model M4E1 .556 caliber assault rifle.



---

1 The FBI has seen this weapon in the "bunker" as part of the government's CCTV and wiretap at the property.

17

It goes without saying that the defendant is not legally allowed to possess a firearm, much less four.

IV.     **CONCLUSION**

When all of these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of defendant as required and/or the safety of the community and the confidential sources in this case.  WHEREFORE, the government respectfully submits that the Government's Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


 */s/ Sara A. Solow*
SARA A. SOLOW
JASON D. GRENELL
Assistant United States Attorney

Dated:  October 28, 2025

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served by electronic mail, on the following defense counsel:

Andrew Gay, Jr.
aggjr@aggjr.com


       */s/ Sara A. Solow*
SARA A. SOLOW
Assistant United States Attorney


Date:   October 28, 2025

Case 2:25-cr-00460-CH     Document 282     Filed 10/30/25     Page 20 of 20

1